Filed 1/21/20

<u>**CERTIFIED FOR PARTIAL PUBLICATION**</u>*

IN THE COURT OF APPEAL OF THE STATE OF
CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| TECHNO LITE, INC.,<br><br>    Plaintiff, Cross-defendant<br>    and Respondent,<br><br>      v.<br><br>EMCOD, LLC, et al.,<br><br>    Defendants, Cross-complainants<br>    and Appellants. | B284989 c/w B289486<br>(Los Angeles County<br>Super. Ct. No. LC101264) |

---

\*     Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of parts A.2. through and including D. of the Discussion.

APPEAL from a judgment and order of the Superior Court of Los Angeles County, Rick Brown, Judge and Virginia Keeny, Judge. Affirmed.

Schwartz & Asiedu and Kwasi A. Asiedu; Law Offices of Stephen K. Lubega and Stephen K. Lubega for Defendants, Cross-complainants and Appellants.

Reed & Reed and Darren G. Reed for Plaintiff, Cross-defendant and Respondent.

_____

**INTRODUCTION**

Appellants Scott Drucker and Arik Nirenberg worked for respondent Techno Lite, a company engaged in selling lighting transformers that was previously owned by Neil Olshan and respondents Stefan Poenitz and David Tour. While Drucker and Nirenberg worked for Techno Lite, they also ran their own company, appellant Emcod, LLC. Though Emcod also sold transformers, Techno Lite consented to Drucker's and Nirenberg's operating Emcod while working for Techno Lite, based on their promise that they would run Emcod on their own time, and that Emcod would not compete with Techno Lite.

In 2013, after Olshan died, Poenitz and Tour offered to gift Olshan's shares in Techno Lite to Drucker. Drucker refused the shares and instead offered to purchase Techno Lite from Poenitz and Tour. Although the parties negotiated, no purchase was consummated, and Drucker and Nirenberg resigned from Techno Lite in mid-December 2013.

Shortly thereafter, Techno Lite accused Drucker, Nirenberg, and appellant Joseph Frole -- an outside salesperson who sold products on behalf of both Techno Lite and Emcod -- of stealing its customers and misappropriating its trade secrets.

On January 29, 2014, Techno Lite filed a complaint against Emcod, Drucker, Nirenberg, and Frole for breach of fiduciary duty, misappropriation of trade secrets, interference with contractual relationships, intentional and negligent interference with prospective economic advantage, conversion, injunctive relief, and constructive trust.  Emcod, Drucker, and Nirenberg, in turn, cross-complained against Techno Lite, its owners, its operations manager respondent Rodney Davis, and several others for intentional interference with contract, intentional and negligent interference with prospective economic relations, violation of the California unfair competition law, violation of the Cartwright Act, violation of the unfair business practices act, defamation, and injunctive relief.  Techno Lite subsequently filed two amended complaints, adding causes of action for fraud and unfair business practices.

Appellants secured summary adjudication of Techno Lite's misappropriation of trade secrets claim before the Honorable Russell S. Kussman.  The parties thereafter proceeded to a court trial on the remaining causes of action before the Honorable Rick Brown.  After the close of evidence, as part of appellants' closing argument, Emcod, Drucker, and Nirenberg requested leave to amend their cross-complaint to conform to proof to add a cause of action

3

for breach of contract for Poenitz's and Tour's failure to sell Techno Lite to Drucker and Nirenberg. The court denied the request. Following the conclusion of the trial and a subsequent hearing, the court found Drucker, Nirenberg, and Frole liable for interfering with Techno Lite's prospective economic advantage, and also found Drucker, Nirenberg, and Emcod liable for fraud and unfair competition.[1] The court dismissed appellants' cross-complaint. In a later proceeding, the Honorable Virginia Keeny denied appellants' motion for attorneys' fees for defeating Techno Lite's misappropriation of trade secrets claim.

Appellants now argue the courts below erred by: (a) finding Drucker, Nirenberg, and Emcod liable for fraud; (b) finding appellants liable for interfering with respondent Techno Lite's prospective economic advantage; (c) denying Emcod, Drucker, and Nirenberg's motion for leave to amend their cross-complaint to conform to proof; and (d) denying appellants' motion for attorneys' fees after appellants secured summary adjudication of Techno Lite's claim for misappropriation of trade secrets. In the published portion of the opinion, we reject appellants' argument that they

---

[1] As to the remaining causes of action, the court found against Techno Lite on its claims of breach of fiduciary duty and interference with contractual relations, found Techno Lite's conversion claim to be de minimis and awarded no damages for it, and found Techno Lite's causes of action for injunctive relief and constructive trust to be moot.

4

could not be found liable for fraud because their promise not to compete against their current employer was void under Business and Professions Code section 16600. In the unpublished portion of the opinion, we reject their remaining contentions and affirm.

## STATEMENT OF RELEVANT FACTS

### A. *Poenitz and Tour Purchase Techno Lite*

In 2003, Olshan, Poenitz, and Tour purchased Techno Lite from Shafrir Romano. Both Drucker and Nirenberg were working for Techno Lite, and they continued on with the new ownership.

Originally, Romano was kept on to run Techno Lite, but in 2005, following a dispute with the new owners, Romano left the company and Drucker was tasked with running Techno Lite. Following his departure, Romano interfered with Techno Lite's relationship with its suppliers, nearly causing Techno Lite to go out of business.

### B. *Drucker and Nirenberg Found Emcod and Promise Emcod Will Not Compete with Techno Lite*

In 2006, with Techno Lite in dire financial straits, Drucker and Nirenberg founded Emcod, LLC.[2] Drucker testified they did so because they "were in fear of Techno Lite closing its doors." They "started Emcod as a backup to

---

[2] By the time trial began, Emcod had become a corporation.

basically have something to fall on to if Techno Lite was to close its doors." Drucker and Nirenberg were each 50 percent owners of Emcod, and its only employees.

When Olshan, Tour, and Poenitz discovered Emcod, the parties had "many discussions," but ultimately they decided to permit Drucker and Nirenberg to operate Emcod while still working for Techno Lite, because Drucker and Nirenberg promised them Emcod would not compete with Techno Lite. Drucker testified he told Techno Lite's owners that Emcod would not compete with them in the lighting industry. Tour testified that Nirenberg promised him Emcod's business "will have nothing to do with any of your parts. We're not going into competition with you." Tour further testified that he and Techno Lite's other owners were assured that Emcod's operations "weren't going to affect [Techno Lite's] business in any way, shape, or form." Poenitz testified that "Arik [Nirenberg] and/or Scott [Drucker]" told him "that Emcod made custom transformers . . . that had nothing to do with [Techno Lite's] market or [its] customer base."

In 2009, Frole began selling products for both Techno Lite and Emcod as an outside salesperson; he was paid by commission on products sold.

### C. *Emcod Begins Competing with Techno Lite; Appellants Conceal Their Actions*

In 2012, Emcod started selling to Techno Lite customers the same products Techno Lite was selling. Specifically, Drucker admitted that Emcod sold to certain

Techno Lite customers such as Diode L.E.D., G.M. Lighting, Five Star Wholesale, Ark Lighting, and Village View Lighting the same products Techno Lite sold. Drucker claimed Emcod did this because Techno Lite did not have the resources to fill customer demand, so Emcod stepped in to "maintain and keep the account." Drucker claimed Emcod was able to sell to these customers when Techno Lite could not, due to Drucker's personal connections. Drucker did not tell Techno Lite's owners that Emcod was selling to their customers, and Emcod kept the profits from these sales.

In 2013, long before Drucker offered to purchase Techno Lite, several e-mails were sent to Techno Lite's customers asking them to replace Techno Lite with Emcod. For example, on January 7, 2013, Frole wrote an e-mail to L.E.D. Lighting Wholesale, a customer Drucker admitted was "the type of lighting wholesaler that Techno[]Lite could sell to," stating: "'All of our accounts are going to be changed to the new name, Emcod. Consequently, we want to clean up all the old invoices.'" After Frole forwarded this e-mail to Drucker, Drucker responded with, "'Thanks, Joe.'"

On April 25, 2013, Frole forwarded to Drucker an e-mail he had sent to Light Bulbs Unlimited, telling the company representative where a list of Emcod's products could be found. In response, Drucker stated, "'We have to be very careful who we contact until we leave here. I don't trust Joe [the person to whom Frole had sent the e-mail]. He is a dirtbag from dealing with him in the past. Please talk with me before contacting any customers about Emcod. We can only go after accounts we trust. We can't risk

7

Magnitude [Shafrir Romano's company which also sold transformers], Shafrir calling David [Tour] or Stefan [Poenitz] saying we are taking over with Emcod.'"

On October 4, 2013, Frole sent an e-mail to Village View Lighting (a Techno Lite customer) asking, "How much of a problem would it be for you to change the purchase order that you have in your computer from TechnoMagnet to Emcod, same address?[3]  Emcod is a company that Scott [Drucker] and Arik [Nirenberg], the engineer, have had for the last seven years making the same products as Techno Lite.  They are in the process of talking to the owners of TechnoMagnet to buy them out.  They have been talking about going out on their own for quite a while and decided to do it now."

###   D.    *Drucker Offers to Buy Techno Lite; Negotiations Fail; Lawsuits Commence*

After Olshan died, Poenitz and Tour decided to offer Olshan's shares of Techno Lite to Drucker for free.  Drucker declined their offer, and instead offered to purchase Techno Lite from Poenitz and Tour.  Drucker testified the parties had agreed on terms, but when he arrived to sign the final contracts Poenitz and Tour asked for $100,000 more.  Drucker countered Poenitz and Tour's new offer by increasing his previous offer by $50,000.  Poenitz and Tour

---

[3]     TechnoMagnet was a DBA (doing business as) of Techno Lite.

rejected Drucker's counteroffer, and Drucker and Nirenberg resigned from Techno Lite on December 13, 2013. Rodney Davis was brought in to replace Drucker as operations manager.

On January 29, 2014, Techno Lite sued appellants, alleging causes of action for breach of fiduciary duty, misappropriation of trade secrets, interference with contractual relationships, intentional and negligent interference with economic advantage, conversion, injunctive relief, and constructive trust. The gist of Techno Lite's complaint was that while Drucker and Nirenberg were employed by Techno Lite, appellants were siphoning off accounts of Techno Lite's and diverting the business of their employer to their own company, Emcod.

On March 3, 2014, Emcod, Drucker, and Nirenberg cross-complained against Techno Lite, David Tour, and Stefan Poenitz, among others, for intentional interference with contract, intentional and negligent interference with prospective economic relations, violation of various unfair competition and antitrust statutes, defamation, and injunctive relief. The gist of their cross-complaint was that Techno Lite and persons acting under its direction were interfering with Emcod's business by warning Emcod's suppliers they would lose business if they supplied Emcod, and by telling Emcod's customers that Drucker and Nirenberg had committed improprieties while running Techno Lite and had stolen Techno Lite's proprietary information.

9

### E. *The Court Finds Techno Lite Has No Trade Secrets*

Through discovery, Techno Lite eventually identified its trade secrets as its "Customer List." On July 15, 2015, appellants moved for summary judgment or summary adjudication, arguing in part that Techno Lite had been "unable to establish the existence of any trade secrets as defined by Civil Code §3426." In responding to appellants' motion, Techno Lite admitted its customer list had been "prominently and publicly exhibited for years on Techno Lite's website."[4] On September 23, 2015, the Honorable Russell S. Kussman granted appellants' motion for summary adjudication as to Techno Lite's misappropriation of trade secrets claim, but denied it as to all other causes of action.

### F. *Trial*

On June 29, 2016, Techno Lite filed its second amended complaint (SAC), alleging causes of action for breach of fiduciary duty, interference with contractual relationships, intentional and negligent interference with economic advantage, conversion, fraud, unfair business practices, injunctive relief, and constructive trust. On September 19, 2016, the parties proceeded to a court trial before the Honorable Rick Brown on the SAC and Emcod,

---

[4] A trade secret is "information" that derives value "from not being generally known to the public" and "[i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy." (Civ. Code, § 3426.1, subd. (d).)

10

Drucker, and Nirenberg's cross-complaint. Techno Lite presented evidence that Drucker and Nirenberg had promised Techno Lite that Emcod would not compete with it. Techno Lite also presented evidence that Emcod sold products that Techno Lite also sold to customers who had previously purchased from Techno Lite.

After the close of evidence, during their closing argument, Emcod, Drucker, and Nirenberg asked the court for permission to amend their cross-complaint to conform to proof to add a breach of contract cause of action, alleging Tour and Poenitz breached a contract to sell Techno Lite to Drucker and Nirenberg. The court denied the request, finding the amendment would be "prejudicial to the other side," and that the evidence at trial showed "there was no meeting of the mind[s]."

Following a seven-day trial, the court found for Techno Lite on the causes of action for intentional interference with contractual relations, intentional and negligent interference with prospective economic advantage, fraud and unfair competition. In its statement of decision, the court found that Emcod wrongfully diverted $390,952.23 in sales in 2013, and at least $1,000,000 in 2014; it awarded 15 percent of those amounts as damages (15% being the profit margin Drucker testified to), or $208,642. Using a multiplier of three, the court also awarded $625,926 in punitive damages. The court found against Emcod, Drucker, and Nirenberg on their cross-complaint. However, in response to appellants' motion for new trial, the court vacated the statement of decision and judgment and reopened the case "on the issue of

11

the award of punitive damages and the financial situation of defendants Scott Drucker, Arkadi [Arik] Nirenber[g] and Emcod LLC only." The court also stated it would "address the issue of multiplier as to punitive damages for individual defendants Drucker and Nirenberg and Emcod LLC."

## G. *The Court Reopens Proceedings and Reduces Damages*

On March 9, 2017, the court heard evidence relating to "the award of punitive damages and the financial situation of defendants Drucker, Nirenberg, and Emcod . . . ." It also heard argument addressing "on what basis can plaintiffs be awarded a portion of Emcod's 2014 net proceeds in a year when Drucker and Nirenberg were not employed by Techno[]Lite." The court additionally heard argument on "whether using the 15 percent [margin to determine net profits] . . . is the reasonable approach to be taken."

At the conclusion of the hearing, the court struck $150,000 (i.e. 15% of the $1,000,000 Emcod earned in 2014) from the compensatory damages, leaving $58,642, plus interest, and used a multiplier of 0.5 for punitive damages against Drucker, Nirenberg, and Emcod, awarding $29,321 against each defendant, or $87,963 total. On July 6, 2017, the court issued a Statement of Decision and Judgment to this effect. Appellants timely appealed.

**H.** *The Court Denies Appellants' Request for Fees*

On August 21, 2017, appellants moved for attorneys' fees under Civil Code section 3426.4, requesting the fees incurred in defeating Techno Lite's trade secret claim. The Honorable Virginia Keeny heard the motion on February 14, 2018, and denied it. Appellants timely appealed. We subsequently granted a motion to consolidate the appeals.

## DISCUSSION

**A.** *The Court Did Not Err in Finding Appellants Liable for Fraud*

**1.** *A Promise Not to Compete with an Employer While Employed Is Not Void*

Appellants argue the trial court erred in holding them liable for fraud because the false promise on which the fraud was based was void as a matter of law. Specifically, appellants argue any promise Drucker and Nirenberg made not to compete with Techno Lite was void because, "the covenant not to compete with Techno-Lite was contrary to public policy and in violation of the express provisions of Business & Professions [Code] section 16600." Because "[a] promise . . . to violate a statute or to violate an expressly stated legislative public policy is *ab initio* invalid, [it] cannot form the basis of a promisee's justifiable reliance; and justifiable reliance is a critical element of a promissory fraud action." We disagree that Business and Professions Code

13

section 16600 (hereinafter Section 16600) renders Drucker and Nirenberg's promise void.

"Business and Professions Code section 16600 has consistently been interpreted as invalidating any employment agreement that unreasonably interferes with an employee's ability to compete with an employer *after* his or her employment ends. (See *Muggill v. Reuben H. Donnelley Corp.* (1965) 62 Cal.2d 239, 242 [42 Cal. Rptr. 107, 398 P.2d 147].) However, the statute does not affect limitations on an employee's conduct or duties *while employed.* 'While California law does permit an employee to seek other employment and even to make some "preparations to compete" before resigning [citation], California law does not authorize an employee to transfer his loyalty to a competitor. During the term of employment, an employer is entitled to its employees' "undivided loyalty." [Citation.]' (*Fowler v. Varian Associates, Inc.* (1987) 196 Cal.App.3d 34, 41 [241 Cal. Rptr. 539].)" (*Angelica Textile Services, Inc. v. Park* (2013) 220 Cal.App.4th 495, 509 (*Angelica*).)

In *Angelica*, "a former employee breached his employment agreement and his duty of loyalty to plaintiff because, while still employed by plaintiff, the employee disparaged plaintiff to a local bank and, in negotiating new linen contracts with large customers of plaintiff, gave the customers cancellation rights that are not customary in the industry and that permitted those customers to shortly thereafter take their business to the employee's new employer." (*Angelica, supra,* 220 Cal.App.4th at p. 499.) During the course of his employment, this former employee

14

had signed an agreement promising "he would not, during his employment, 'become interested, directly or indirectly, as a partner, officer, director, stockholder, advisor, employee, independent contractor or in any other form or capacity, in any other business similar to Company's business.'" (*Id.* at p. 500.) In addressing whether some of the company's claims against the former employee were barred by Section 16600, the court held, "[Because] [plaintiff's] claims are based on [defendant]'s conduct during his employment by [plaintiff] . . . they are in no sense barred by Business and Professions Code section 16600." (*Angelica, supra*, at p. 509.)

In their reply brief, appellants acknowledge *Angelica* but attempt to distinguish it by arguing: (1) *Angelica* failed to address the Supreme Court case of *Edwards v. Arthur Andersen LLP* (2008) 44 Cal.4th 937 (*Edwards*); and (2) the competing employee in *Angelica* was an officer and therefore a fiduciary, whereas Drucker and Nirenberg were not. We are unpersuaded.

First, it is unsurprising the *Angelica* court failed to mention *Edwards* as the latter case is inapposite. In *Edwards*, our Supreme Court invalidated a noncompetition agreement that "prohibited [plaintiff] from working for or soliciting certain Andersen clients for limited periods following his termination." (*Edwards, supra,* 44 Cal.4th at p. 942.) The court's declaration that noncompetition agreements were "invalid under section 16600 in California, even if narrowly drawn, unless they fall within the applicable statutory exceptions of section 16601, 16602, or 16602.5" thus defined a category of agreements that could

15

not be enforced against former employees who sought to compete with their former employers after leaving their employment. (*Id.* at p. 955.) *Edwards* did not address -- much less invalidate -- agreements by employees not to undermine their employer's business by surreptitiously competing with it while being paid by the employer. (See *Kinsman v. Unocal Corp.* (2005) 37 Cal.4th 659, 680 ["'It is axiomatic that language in a judicial opinion is to be understood in accordance with the facts and issues before the court. An opinion is not authority for propositions not considered'"], quoting *Chevron U.S.A., Inc. v. Workers' Comp. Appeals Bd.* (1999) 19 Cal.4th 1182, 1195.)

Second, while appellants correctly note the employee in *Angelica* was an officer (and thus owed his employer a fiduciary duty), this is a distinction without a difference. If appellants were correct that *Edwards* invalidated all noncompetition agreements -- regardless of employment status -- "unless they fall within the applicable statutory exceptions of section 16601, 16602, or 16602.5," it would not matter whether the employee was an officer; there are no "officer" or "fiduciary" exceptions enumerated in Business and Professions Code sections 16601, 16602, or 16602.5.

Appellants' other cases -- *Bancroft-Whitney Co. v. Glen* (1996) 64 Cal.2d 327 (*Bancroft-Whitney*), *Mamou v. Trendwest Resorts, Inc.* (2008) 165 Cal.App.4th 686 (*Mamou*), and *Quidel Corp. v. Superior Court* (2019) 39 Cal.App.5th 530 (*Quidel*), review granted November 13, 2019, S258283 -- are also inapposite. In *Bancroft-Whitney*, the Supreme Court expressly held that in certain situations,

an officer could be liable for competing with his current employer. (*Bancroft-Whitney*, *supra*, 64 Cal.2d at p. 347 [there is "no requirement that an officer disclose his preparations to compete with the corporation in every case, and failure to disclose such acts will render the officer liable for a breach of his fiduciary duties only where particular circumstances render nondisclosure harmful to the corporation." "Conversely, the mere act of disclosing his activities cannot immunize the officer from liability where his conduct in other respects amounts to a breach of duty. The significant inquiry in each situation is whether the officer's acts or omissions constitute a breach under the general principles applicable to the performance of his trust"].)

In *Mamou*, the court found employees could prepare to compete with their employer "'so long as they do so on their own time and with their own resources.'" (*Mamou*, *supra*, 165 Cal.App.4th at 719.) But the court recognized "'while an employee may secretly incorporate a competing business prior to departing, the employee may not use his or her principal's time, facilities or proprietary secrets to build the competing business.'" (*Ibid.*, quoting *Chemfab Corp. v. Integrated Liner Tech. Inc.* (N.Y.App.Div. 1999) 263 A.D.2d 788, 790.) As particularly relevant here, the court noted that "'[s]olicitation of an employer's customers likely will constitute a violation of the duty of loyalty in almost every case . . . .'" (*Ibid.*, quoting *Futch v. McAllister Towing of Georgetown* (1999) 335 S.C. 598, 609-610.)

17

Finally, *Quidel* dealt with a noncompetition agreement between two corporations. *Quidel, supra*, 39 Cal.App.5th at p. 538. In rejecting the argument that *Edwards* invalidated the noncompetition agreement in question, the court noted "the per se ban on noncompetition clauses outlined in *Edwards* is limited to employment agreements." (*Id.* at p. 539.) *Quidel*'s statement regarding the inapplicability of *Edwards* to an agreement between two corporations does not support appellants' claim that *Edwards* prohibits an employee from agreeing not to compete with his current employer.

Appellants do not cite -- and we have not found -- a single case in which Section 16600 was held to invalidate an agreement not to compete with one's current employer while employed by that employer. The public policy behind Section 16600 is to ensure "that every citizen shall retain the right to pursue any lawful employment and enterprise of their choice" (*Metro Traffic Control, Inc. v. Shadow Traffic Network* (1994) 22 Cal.App.4th 853, 859) and to encourage "open competition and employee mobility" (*Edwards*, *supra*, 44 Cal.4th at p. 946); it is not to immunize employees who undermine their employer by competing with it while still employed. "We state the obvious in observing that no 'firmly established principle of public policy' [citation] authorizes an employee to assist his employer's competitors." (*Fowler v. Varian Associates, Inc., supra,* 196 Cal.App.3d at p. 43; see also *ibid.* [a company has good cause to terminate an employee who helped "in obtaining financing for[] an enterprise organized to become [his employer]'s direct

18

competitor"].) It should be even more obvious that no firmly established principle of public policy authorizes an employee to become his employer's competitor while still employed. Section 16600 is not an invitation to employees to bite the hand that feeds them.

Drucker and Nirenberg's promise that Emcod would not compete with Techno Lite was not void *ab initio*, and Techno Lite was entitled to rely on it. Accordingly, the trial court did not err in finding appellants liable for fraud based on that false promise.[5]

## 2. *Appellants Had a Duty of Disclosure*

Appellants also argue the court erred by finding them liable for fraud by "conceal[ing] they were diverting orders from Techno-Lite to Emcod in violation of their 2006 covenant not to compete" because appellants lacked a duty to disclose these facts to Techno Lite. Because, as discussed above, we affirm the trial court's finding of fraud based on

---

[5] In their reply brief, appellants suggest for the first time that any noncompetition agreement Drucker and Nirenberg entered with Techno Lite was per se invalid because "[t]here is no evidence that Techno Lite's shareholders limited their restraint only for as long as Nirenberg and Drucker remained employees of Techno Lite." We need not consider this untimely argument. (*In re Marriage of Khera & Sameer* (2012) 206 Cal.App.4th 1467, 1477-1478 ["'Obvious reasons of fairness militate against consideration of an issue raised initially in the reply brief of an appellant.'" "'"[P]oints raised in the reply brief for the first time will not be considered, unless good reason is shown for failure to present them before"'"].) No such reason has been presented.

19

the broken promise not to compete, whether Drucker and Nirenberg had a duty to disclose is moot. Nevertheless, as set forth below, we find the trial court did not err in holding appellants liable for fraud for concealing their diversion of orders to Emcod.

Appellants recognize "[a] duty to disclose may . . . arise . . . 'in at least three instances: (1) the defendant makes representations but does not disclose facts which materially qualify the facts disclosed, or which render his disclosure likely to mislead;[] (2) the facts are known or accessible only to defendant, and defendant knows they are not known to or reasonably discoverable by the plaintiff;[] (3) the defendant actively conceals discovery from the plaintiff.'" (*Warner Constr. Corp. v. City of Los Angeles* (1970) 2 Cal.3d 285, 294, fns. omitted.)

All three instances are present here. First, appellants represented that Emcod would not compete with Techno Lite but failed to disclose their intention to do so. Second, Drucker admits he never told Techno Lite's owners that Emcod was selling to Techno Lite customers the same products Techno Lite sold, and because Drucker was the individual managing Techno Lite, these facts were not reasonably discoverable by Techno Lite. Finally, appellants took pains to conceal their activities from Techno Lite, for example writing an e-mail stating: "We have to be very careful who we contact until we leave here. . . . We can only go after accounts we trust. We can't risk Magnitude [Shafrir Romano's company], Shafrir calling David [Tour] or Stefan [Poenitz] saying we are taking over with Emcod."

20

Appellants' arguments to the contrary are unavailing. They contend that because Drucker's and Nirenberg's continued employment was conditioned on Emcod's not competing with Techno Lite, this created a "concomitant duty by the employer to reasonably monitor a breach." Appellants' only authority for this proposition, *Foley v. Interactive Data Corp.* (1988) 47 Cal.3d 654, is inapplicable. *Foley* holds "[t]he presumption that an employment relationship of indefinite duration is intended to be terminable at will is . . . 'subject, like any presumption, to contrary evidence. This may take the form of an agreement, express or implied, that . . . the employment relationship will continue indefinitely, pending the occurrence of some event such as the employer's dissatisfaction with the employee's services or the existence of some "cause" for termination.'" (*Id.* at p. 680.) Nothing in *Foley* holds that an employee's promise not to compete with his employer saddles the employer with a duty to monitor him for compliance, much less that a failure to do so absolves the employee of the consequences of his duplicity.

Appellants argue that because Techno Lite knew Emcod was a "potentially competing enterprise," Techno Lite could not claim to have been deceived when Emcod began to compete. Appellants miss the point -- Techno Lite did not claim it was unaware Emcod was a potentially competing enterprise; Techno Lite was deceived because Drucker and Nirenberg promised it Emcod would *not* compete. If knowledge that individuals sometimes lie and fail to abide

by their promises precluded liability for fraud, no fraud action could ever prevail.

Appellants argue they were "legally free . . . to *not disclose* that they were preparing to compete with Techno-Lite until (according to the trial court) when they decided to compete in 2011," citing *Bancroft-Whitney*, *supra*, 64 Cal.2d at pp. 346-347. They argue their lack of duty to disclose renders their actual competition "a breach of their employment contract . . . and not . . . [a] fraudulent[] breach[ of] a duty of disclosure . . . ." But appellants admit a duty of disclosure arises when "the defendant makes representations but does not disclose facts which materially qualify the facts disclosed, or which render his disclosure likely to mislead." *Bancroft-Whitney* did not address such as situation.[6] Here, Drucker and Nirenberg promised Techno Lite they would not compete with it, without disclosing that they intended to do so in the future. Regardless of any inherent duty to disclose their preparations to compete, their representation that Emcod would not compete created an independent duty of disclosure.

---

[6]     *Bancroft-Whitney* simply recognized that "[t]here is no requirement that an officer disclose his preparations to compete with the corporation in every case," while noting that "failure to disclose such acts will render the officer liable for a breach of his fiduciary duties only where particular circumstances render nondisclosure harmful to the corporation." (*Bancroft-Whitney*, *supra*, 64 Cal.2d at p. 347.)

22

Finally, citing *Hoffman v. 162 North Wolfe LLC* (2006) 228 Cal.App.4th 1178, 1193-1194, appellants argue Techno Lite cannot show reasonable reliance on appellants' concealment because "the record also does not show that had Techno-Lite's shareholders known of the allegedly concealed facts (i.e., that its employees were going to compete against it), Techno-Lite would have behaved differently."[7]  As "evidence" of this claim, appellants note that after Drucker angered the Techno Lite shareholders by rejecting their offer of Olshan's shares and instead offering to purchase Techno Lite, "respondents did not terminate his employment." Appellants' argument falls wide of the mark.  First, no evidence suggests that in offering to purchase Techno Lite, Drucker revealed Emcod was poaching Techno Lite customers.  Therefore, Techno Lite's reaction to Drucker's offer has no bearing on how Techno Lite would have reacted had Drucker revealed Emcod was selling to Techno Lite's customers.  Second, Techno Lite's shareholders testified they did not immediately fire Drucker because they had no one to replace him.  After Drucker made his offer, however, the shareholders began looking for someone to replace him.  Had Drucker not concealed from Techno Lite the true facts

---

[7]      (*Hoffman v. 162 North Wolfe LLC, supra,* 228 Cal.App.4th at pp. 1193-1194 [justifiable reliance "'can be proved in a fraudulent omission case by establishing that "had the omitted information been disclosed, [the plaintiff] would have been aware of it and behaved differently"'"].)

regarding Emcod's actions, Techno Lite could have begun this search earlier.

**B.** ***The Court Did Not Err in Finding Appellants Liable for Interference with Prospective Economic Advantage***

Appellants argue the trial court erred in finding them liable for interfering with prospective economic advantage because: (1) "respondent failed to show that appellants engaged in independently wrongful conduct by Emcod selling to former or existing Techno-Lite customers"; and (2) "Techno-Lite did not show that it had economic relationships with those customers that probably would have resulted in future economic benefit to Techno-Lite." As discussed below, we disagree.

**1.** ***Appellants Committed an Independently Wrongful Act***

Appellants argue the trial court erred in finding that appellants' breach of their promise not to compete was an independently wrongful act because "the purported 2006 non-compete promise was unlawful under B&PC §16600." As explained, such a promise was not unlawful.[8]

---

[8] In a footnote, appellants complain "[t]he trial court's ruling fails to show how Emcod became bound to the non-compete agreement." When Drucker and Nirenberg promised Techno Lite would not compete, they were Emcod's only members and employees. Their representations on behalf of Emcod were binding upon it. (Corp. Code, § 17703.01, subd. (a) ["Unless the
(*Fn. is continued on the next page.*)

24

Accordingly, the court did not err in finding appellants' breach to be an independently wrongful act.[9]

### 2. *Substantial Evidence Supports the Court's Finding of Future Economic Benefit*

Appellants argue the court erred in finding Techno Lite "had economic relationships with Diode LED, GM Lighting, star [sic] Wholesale; . . . Village [View] Lighting and Ark Lighting that probably would have resulted in an economic benefit to Plaintiff" because "Drucker testified all were either already lost or would have been lost by Techno-Lite regardless of Emcod's intervention," and "no evidence in the

---

articles of organization indicate the limited liability company is a manager-managed limited liability company, every member is an agent of the limited liability company for the purpose of its business or affairs, and the act of any member, including, but not limited to, the execution in the name of the limited liability company of any instrument, for the apparent purpose of carrying on in the usual way the business or affairs of the limited liability company of which that person is a member, binds the limited liability company in the particular matter, unless the member so acting has, in fact, no authority to act for the limited liability company in the particular matter and the person with whom the member is dealing has actual knowledge of the fact that the member has no such authority"].)

[9]  Because we find appellants' breach of their promise not to compete to be an independently wrongful act, we do not address their argument regarding the wrongfulness of Emcod's obtaining an Electrical Testing Laboratories (ETL) certification using data that arguably belonged to Techno Lite.

25

record . . . contradicts Drucker's account . . . ." We review the court's finding for substantial evidence.

Substantial evidence supports the trial court's finding that Techno Lite likely would have realized an economic benefit if not for appellants' wrongful actions. It is undisputed that the customers in question had all previously purchased product from Techno Lite. This fact alone supported the inference that Techno Lite's relationship with such customers would have continued, thus providing it with an economic benefit. Indeed, appellants admit Village View Lighting was an account Techno Lite would not have lost, absent Emcod's actions. The sole evidence to challenge this inference came from Drucker, whom the court expressly found to be not credible.

Additionally, Drucker himself testified that: (1) Techno Lite and Emcod both sold the transformers at issue here; and (2) Emcod was able to buy and deliver the products ordered when Techno Lite could not because of Drucker's personal connections. This testimony supports a finding that Drucker could have used these same connections to help Techno Lite, but instead interfered with Techno Lite's prospective economic advantage by selling through Emcod.

### C. *The Court Did Not Err in Denying Appellants' Motion for Leave to Amend*

Appellants argue the trial court abused its discretion by denying their request to amend their cross-complaint to add a breach of contract cause of action regarding Poenitz and Tour's failure to sell Techno Lite to Drucker and

26

Nirenberg.  The court found that such an amendment would be prejudicial to Techno Lite, and that the evidence at trial showed no contract had been formed.  Appellants contend such an amendment would have caused "no prejudice because the cross-complaint fully and completely alleged the facts of respondents' breach of contract; and the evidence admitted at trial sufficiently proved the breach."  The record contradicts this claim.

### 1. *The Amendment Would Have Prejudiced Techno Lite*

Preliminarily, contrary to appellants' contention, they failed to allege a breach of contract in the cross-complaint.  Indeed, appellants' counsel admitted this at trial:

> "The Court: All right.  There's a motion to conform pleading to proof or amend the pleadings.  The standards are whether the facts of legal theories have been changed, whether the proposed amendment would prejudice the opposing party.  Totally different cause of action, talking about the breach of contract for sale of a business; right?  Yeah.  And also there was evidence in this trial that shows there was a -- shows that Mr. Drucker made a counteroffer.  So it suggests to this court that it wasn't final.  It was in the negotiating phase, and it didn't materialize, and there was no meeting of the mind.

"Mr. Lubega: Well, your honor, there was a meeting of the mind.

"The Court: You didn't allege it in your complaint.

"Mr. Lubega: I know it's not alleged in the complaint."

What appellants alleged in their cross-complaint was that "[b]y December 13, 2013, Drucker and Nirenberg believed that all parties were finally in agreement and went to Techno Lite's attorney's office (Martin Reed) with two checks in the amount of $70,000 in the belief that they were going there to sign the transaction documents and close the deal." "However, at the closing at Reed's office . . . Tour and Poenitz demanded an additional $100,000 to close the deal . . . . In an effort to save the deal, Drucker and Nirenberg counter offered to pay an additional $50,000. Tour and Poenitz rejected the counter-offer."

"The elements of a cause of action for breach of contract are "'(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff.'"" (*Tribeca Companies, LLC v. First American Title Ins. Co.* (2015) 239 Cal.App.4th 1088, 1109.) "Mutual assent or consent is necessary to the formation of a contract." (*Alexander v. Codemasters Group Limited* (2002) 104 Cal.App.4th 129, 141.) Here, the cross-complaint explicitly alleged the parties did not mutually

28

consent.  And it failed to allege any damages arising from cross-defendants' unalleged breach of contract.

Because the cross-complaint contained no allegations regarding a meeting of the minds or damages caused by the purported breach, appellants were attempting to allege new facts when they asked to amend to conform to proof.  "If new facts are being alleged, prejudice may easily result because of the inability of the other party to investigate the validity of the factual allegations while engaged in trial or to call rebuttal witnesses."  (*City of Stanton v. Cox* (1989) 207 Cal.App.3d 1557, 1563.)  Appellants made no mention of their intent to move to amend their cross-complaint to add a breach of contract cause of action until after trial had begun, and nothing in the record shows cross-defendants had prepared to defend such an action.  The trial court did not err in finding the amendment of the cross-complaint to be prejudicial.

## 2. *Any Error in Denying the Motion Was Harmless*

"Contract formation requires mutual consent, which cannot exist unless the parties 'agree upon the same thing in the same sense.'"  (*Bustamante v. Intuit, Inc.* (2006) 141 Cal.App.4th 199, 208.)  "Damages are an essential element of a breach of contract claim."  (*Behnke v. State Farm General Ins. Co.* (2011) 196 Cal.App.4th 1443, 1468.)  As the trial court recognized, appellants' own evidence confirmed a lack of mutual consent, and they presented no evidence of damages.

"Our state Constitution provides that '[n]o judgment shall be set aside, or new trial granted, in any cause, . . . for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice.'" (*Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 800, citing Cal. Const., art. VI, § 13.) "'[A] "miscarriage of justice" should be declared only when the court, "after an examination of the entire cause, including the evidence," is of the "opinion" that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.'" (*Ibid.*, citing *People v. Watson* (1956) 46 Cal.2d 818, 836.) Because appellants failed to demonstrate either a meeting of the minds or damages for cross-defendants' alleged breach of contract, any error in denying leave to amend was harmless.

### D. *The Court Did Not Abuse Its Discretion in Denying Appellants' Motion for Attorneys' Fees*

On February 14, 2018, the Honorable Virginia Keeny denied appellants' motion for attorneys' fees incurred in defeating Techno Lite's misappropriation of trade secrets claim. Appellants argue the court "abused her discretion by ignoring the clear evidence in the court's record of the objective and subjective speciousness of Techno-Lite's trade secrets misappropriation claim, which had been dismissed on summary adjudication." We disagree.

"If a claim of misappropriation is made in bad faith . . . the court may award reasonable attorney's fees and costs to the prevailing party." (Civ. Code, § 3426.4.) "Although the Legislature has not defined 'bad faith,' our courts have developed a two-prong standard: (1) objective speciousness of the claim, and (2) subjective bad faith in bringing or maintaining the action, i.e., for an improper purpose." (*FLIR Systems, Inc. v. Parrish* (2009) 174 Cal.App.4th 1270, 1275.) "Objective speciousness exists where the action superficially appears to have merit but there is a complete lack of evidence to support the claim." (*Id.* at p. 1276.) Subjective bad faith "'means simply that the action or tactic is being pursued for an improper motive. Thus, if the court determines that a party had acted with the intention of causing unnecessary delay, or for the sole purpose of harassing the opposing side, the improper motive has been found, and the court's inquiry need go no further.'" (*Gemini Aluminum Corp. v. California Custom Shapes, Inc.* (2002) 95 Cal.App.4th 1249, 1263, quoting *Summers v. City of Cathedral City* (1990) 225 Cal.App.3d 1047, 1072; see also *Cypress Semiconductor Corp. v. Maxim Integrated Products, Inc.* (2015) 236 Cal.App.4th 243, 260 [a party brings an action in subjective bad faith if it is brought "'for an improper purpose'"].) "[I]nsofar as the ruling [on a motion under Civil Code section 3426.4] depends on questions as to which the trial court was vested with discretion, we will disturb its action only insofar as we are able to conclude that its discretion was abused." (*Cypress, supra*, at p. 253.) Citing *People v. Jackson* (2005) 128 Cal.App.4th 1009, 1018,

appellants recognize "[w]here the standard of review is abuse of discretion, the appellate court examines the ruling of the trial court and asks whether it exceeds the bounds of reason or is arbitrary, whimsical or capricious."

Appellants spend many pages of their opening brief arguing the court "abused her discretion by ignoring the clear evidence in the court's record of the objective and subjective speciousness of Techno-Lite's trade secrets misappropriation claim, which had been dismissed on summary adjudication." Setting aside whether the court correctly concluded the claim was not objectively specious, we find the court did not abuse its discretion in finding Techno Lite's claim was not brought for an improper purpose.

Appellants argue "[t]he improper purposes . . . were that Techno-Lite wanted to use the baseless misappropriation claim to snuff out appellants' ability to compete with Techno-Lite as early as possible." They argue that "[b]ased on its meritless misappropriation claims and with scant analysis, Techno-Lite warned [customers and vendors] of potential legal action if they did business with appellants." But the warning in question -- a letter written by respondent Davis, the operations manager brought in to replace Drucker -- mentions "trade secrets" only once: "During their time of employment, both individuals [Drucker and Nirenberg] used Technolite's capital, engineering and trade secrets to development [*sic*] and establish their own company, EMCOD." The rest of the letter discusses issues such as "gross improprieties" and "acts of conversion and

32

product theft" that took place while Drucker and Nirenberg were employed by Techno Lite, Techno Lite's ownership of products designed by Drucker and Nirenberg while employed by Techno Lite, and legal action Techno Lite had filed against Drucker and Nirenberg. Additionally, at the end of his letter, Davis stated, "Please review the attached; [*sic*] California Labor Board Labor Codes [*sic*] listed below and contact me with any questions." He then pasted text from Labor Code section 2860, and gave summaries of three cases -- *Goodyear Tire & Rubber Co. of Akron, Ohio v. Miller* (9th Cir. 1927) 22 F.2d 353, *Aero Bolt & Screw Co. of Cal. v. Iaia* (1960) 180 Cal.App.2d 728, and *Famous Players-Lasky Corp. v. Ewing* (1920) 49 Cal.App. 676 -- all of which addressed the ownership of designs made by an employee during employment, and none of which dealt with a misappropriation of trade secrets. Thus, the letter was hardly "[b]ased on" Techno Lite's misappropriation of trade secrets claim. As the court noted, Techno Lite "brought the trade secret claim among several other causes of action which the court found meritorious after a trial." We do not find the court's conclusion that Techno Lite lacked an improper motive to be arbitrary, whimsical, or capricious.

In any event, Civil Code section 3426.4 does not mandate an award of attorneys' fees. The statute expressly states the court "may" -- not "shall" -- award fees when the statutory predicates are met. (Civ. Code, § 3426.4; cf. *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.* (N.D.Cal. 2005) 399 F. Supp.2d 1064, 1080 ["attorneys' fees [under Civil Code section 3426.4] . . . [¶] . . . are not mandatory even

33

if the jury finds willful and malicious misappropriation"].) As the court stated, "even where there is evidence of bad faith . . . [Civil Code] Section 3426.4 gives the court discretion to award fees. There is no equitable basis to award fees in this case against an employer which itself had to incur considerable attorneys' fees to preserve its business from its former employees' unscrupulous behavior." Appellants cite no authority finding an abuse of discretion when a court considers the moving party's conduct in deciding whether to award fees, and we do not independently find such consideration to be an abuse. The court did not err in denying appellants' motion for fees.

## DISPOSITION

The judgment and order are affirmed.  Respondent is awarded its costs on appeal.

**CERTIFIED FOR PARTIAL PUBLICATION**



MANELLA, P. J.


We concur:



WILLHITE, J.



CURREY, J.